IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

KATHY CLEMONS, INDIVIDUALLY,
AND AS GUARDIAN OF ELONA CLEMONS,
A MINOR AND KEONTRAY CLEMONS, A MINOR;
AND ON BEHALF OF ALL WRONGFUL DEATH
BENEFICIARIES OF TIARA RENEA CLEMONS,
DECEASED                                                                                         PLAINTIFFS

VS.                                                                         CAUSE NO.: 4:10-cv-209 CWR-FKB

THE UNITED STATES OF AMERICA                                                       DEFENDANT

consolidated with

KATHY CLEMONS, INDIVIDUALLY,
AND AS GUARDIAN OF ELONA CLEMONS,
A MINOR AND KEONTRAY CLEMONS, A MINOR;
AND ON BEHALF OF ALL WRONGFUL DEATH
BENEFICIARIES OF AUBREY ANNA CLEMONS,
DECEASED                                                                                         PLAINTIFFS

VS.

THE UNITED STATES OF AMERICA                                                       DEFENDANT

**PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW**

**FINDINGS OF FACT**[1]

1. On June 27, 2009, Tiara Clemons was a 20 year old Native American female, and a citizen of the Choctaw Nation, residing in Choctaw, Neshoba County, Mississippi. On June 27, 2009, Tiara received a puncture wound near the top of her right scapula. At that time, Tiara Clemons was 30 weeks pregnant with Aubrey Clemons, a minor child. As a result of the wound, Tiara Clemons sought medical treatment for herself and her unborn child from the Choctaw Health Center located in Choctaw, Neshoba County, Mississippi.

---

[1] Proposed Findings of Fact Nos. 1 - 28 have been stipulated between the parties, as set forth in this Court's Pre-Trial Order.

2. At approximately 5:19 p.m., on June 27, 2009, Tiara Clemons was examined by Choctaw ambulance EMT's who responded to her call for assistance due to injuries received from a puncture wound to her back. She was examined, and her vital signs were stable. She was noted to be awake and alert, and sitting on the ground. Importantly, the Choctaw EMT noted that she had "bilateral breath sounds clear to auscultation". Her wound was bandaged, and she was not bleeding externally. Tiara Clemons was given oxygen, and an IV was started on her left hand. In that condition, Tiara Clemons and her unborn child, Aubrey Anna Clemons, were transported to Choctaw Health Center, recognized by the Mississippi Department of Health as a Level IV Trauma Center.

3. Tiara and Aubrey Anna arrived at the Choctaw Health Center by ambulance at 5:22 p.m. They were not seen, examined, or triaged until 5:42 p.m.

4. At 5:42 p.m., Jill Shaw, a family nurse practitioner, examined Tiara. Nurse Shaw noted that Tiara was 30 weeks pregnant with Aubrey Anna, and recorded Tiara's pain at a "10" on a scale of 1 to 10, with 10 being the "most severe" pain. Nurse Shaw ordered laboratory tests on Tiara's blood, a chest x-ray, and that a fetal monitor be placed on Tiara to monitor Aubrey Anna. At 5:42 p.m., Nurse Shaw obtained a blood pressure of 109/62.

5. At 5:45 p.m., Tiara and Aubrey Anna were examined by Dr. Guevarra, the ER doctor staffing the Choctaw Health Center Emergency Room. Dr. Guevarra noted that Tiara had received a stab would in the right scapula, and that by 5:45 p.m., she had decreased breath sounds on the right upper fields. Dr. Guevarra ordered laboratory tests, and ordered that Tiara be given morphine for pain.

6. At 5:53 p.m., Tiara was taken to the radiology room very near the emergency room, where two chest x-rays were taken. The first x-ray was placed in the developer at 5:53 p.m. - the second at 5:57 p.m. These x-rays were available to be viewed by Dr. Guevarra in the emergency room no later than 6:00 p.m. By 6:10 p.m. Dr. Guevarra had reviewed the x-rays and was aware of the internal bleeding.

7. The 5:53 p.m. and 5:57 p.m. chest x-rays revealed that Tiara had a large right pleural effusion, with unilateral pulmonary infiltrate in the right lung, a hemothorax on the right with a fifteen to twenty percent pneumothorax on the right. Upon viewing the x-ray, Dr. Guevarra diagnosed Tiara with a pneumothorax in her right lung, and that she was bleeding internally.

8. At 6:21 p.m., Dr. Guevarra received the result of the blood tests previously ordered. The results showed diminished hemoglobin and hematocrit levels. By 6:40 p.m., Tiara had become hypotensive. Her blood pressure was recorded at

81/47.

9. Between 6:50 p.m. and 7:05 p.m. Dr. Guevarra attempted to arrange a transfer of Tiara to Anderson Medical Center in Meridian, Mississippi, by ground ambulance. Dr. Guevarra called Anderson Regional Medical Center in Meridian, Mississippi, located about 40 miles distance, about a transfer. However, the ER doctor at Anderson denied Dr. Guevarra's request for transfer because Clemons was pregnant. Dr. Guevarra did not tell the doctor at Anderson that it was a life threatening situation regarding Clemons.

10. It was at least 6:50 p.m. when Dr. Guevarra began trying to have Clemons transported to medical facility with emergency services. Dr. Guevarra began this process after being urged by CHC nursing personnel and Choctaw EMS personnel to have Clemons transported to a hospital.

11. Todd Harrison, one of the Choctaw EMT/paramedics, told Dr. Guevarra that Tiara was not stable enough to transport by ground ambulance, and told her to call the AirCare dispatch and send a helicopter to transport Tiara to University Medical Center in Jackson, Mississippi, a Level I Trauma Center. Dr. Guevarra then called for the UMC AirCare helicopter to transport Tiara. Dr. Guevarra contacted UMC which dispatched a helicopter with EMT personnel. She did not relay that CHC had no blood nor ability to drain fluids from Clemons' chest. She did not contact or try to transport Clemons to Neshoba County General Hospital, about 8 miles distance.

12. At approximately 7:00 p.m., Dr. Guevarra ordered another chest x-ray, which revealed a "massive" right hemothorax.

13. At 7:30 p.m., Tiara Clemons was assessed by the UMC AirCare EMT's upon their arrival at the Choctaw Health Center. Upon assessment, Tiara was hypoxic, hypotensive, and worsening. Her blood pressure had fallen to 82/54, her oxygen saturation was at 86%, and her respirations were 36. The UMC EMT's noted the massive hemothorax visualized on the chest x-ray. Tiara was gasping for breath, and no breath sounds could be heard on the right side of her chest. The UMC EMT's requested that Dr. Guevarra perform a thoracostomy. EMT medical notes reflect that Dr. Guevarra repeatedly refused to insert a tube into Clemons' chest to drain the blood despite requests by UMC EMT. Dr. Guevarra did not perform the procedure. The UMC EMT's also requested that Dr. Guevarra give blood to Tiara Clemons. Dr. Guevarra did not order blood to be given, and informed that none was available at the Choctaw Health Center.

14. At approximately 7:30 p.m., the UMC EMT's noted that there was a failure to protect Tiara's airway, and intubated Tiara at 7:35 p.m. At 7:45 p.m., due to

       observed cyanosis (turning blue), decreased breath sounds, severe shortness of breath, decreased cardiac output, low oxygen and oxygen saturation rates, the UMC EMT's performed a needle thoracostomy on the right chest, which returned approximately 300 ml of air and blood.

15. At 8:09 p.m., the UMC AirCare EMT's departed for UMC in the helicopter with Tiara and Aubrey Anna. Measured at 8:15 p.m. and 8:30 p.m., Tiara's oxygen saturation level was 42%. By 8:40 p.m., Tiara's oxygen saturation level had dropped so low that it was incapable of measurement, and was recorded as "0%".

16. At 8:42 p.m., as the AirCare helicopter was approaching UMC, while over the VA Hospital, Tiara went into cardiac arrest. At 8:44 p.m., Advanced Cardiac Life Support protocols were employed by the EMT's, including administration of atropine and epinephrine. From 8:44 p.m. until 8:54 p.m. cardiopulmonary resuscitation (CPR) was performed. At 8:45 p.m., the UMC EMT's performed a needle thoracostomy to Tiara's left chest, which returned 20 ml of air and blood. At 8:50 p.m., the UMC EMT's delivered Tiara to the UMC emergency physicians.

17. At 8:50 p.m. - the UMC emergency physicians performed a thoracostomy and inserted bilateral chest tubes. The chest tube on the right returned 2400 - 2500 cc's of blood. A cardiac ultrasound was performed, which revealed no cardiac activity present in either Tiara or Aubrey Anna.

18. At 8:52 p.m., Aubrey Anna was delivered by emergency Caesarean section, but showed no signs of life. CPR was continued on Tiara Clemons. At 8:54 p.m., another cardiac ultrasound was performed. With no cardiac activity noted, Tiara Clemons and Aubrey Anna Clemons were pronounced dead.

19. At all material times, Dr. Victoria Guevarra, Jill Shaw, FNP, and all other individuals who provided medical care and treatment to Tiara Clemons and Aubrey Anna Clemons were acting in the course and scope of their employment with the Choctaw Health Center, a healthcare facility owned and operated by, and located on property occupied by, the Mississippi Band of Choctaw Indians, in Choctaw, Mississippi.

20. The United States of America, Defendant, is statutorily and at common law responsible for the wrongful and negligent acts, if any, with respect to Tiara Clemons and Aubrey Anna Clemons which occurred at the Choctaw Health Center, located on property occupied by the Mississippi Band of Choctaw Indians, in Choctaw, Mississippi.

21. As the sole wrongful death beneficiaries of Tiara Clemons and Aubrey Anna Clemons, deceased, Elona Clemons and Keontray Clemons, by and through Kathy

        Clemons and Bill Clemons, Guardians, are entitled to assert and prosecute a claim for damages arising out of the wrongful death of Tiara Clemons and Aubrey Anna Clemons.

22. The care rendered to Tiara and Aubrey Anna Clemons on June 27, 2009 did not comply with, and fell below, the standard of care applicable to the Choctaw Health Center, and Dr. Guevarra.

23. Dr. Guevarra and the Choctaw Health Center breached the applicable standard of care while rendering medical care and treatment to Tiara and Aubrey Anna Clemons. The breach of the standard of care included a failure to timely transfer Tiara and Aubrey Anna to a healthcare facility with additional treatment capabilities, and/or failing to insert a chest tube, i.e., perform a thoracostomy, to protect Tiara Clemons airway.

24. Had Tiara and Aubrey Anna Clemons received treatment at the Choctaw Health Center consistent with the applicable standard of care, i.e., timely transfer to a healthcare facility with additional treatment options available and/or insertion of a chest tube, both Tiara and Aubrey Anna Clemons would have survived intact.

25. The breaches of the standard of care of Dr. Guevarra and the Choctaw Health Center while rendering medical care and treatment to Tiara Clemons and Aubrey Anna Clemons were a proximate cause of the deaths of Tiara Clemons and Aubrey Anna Clemons.

26. On June 27, 2009, Tiara Clemons was stabbed by an individual, consistent with the notations in the medical records and autopsy report.

27. The medical expenses associated with Tiara Clemons and Aubrey Anna Clemons treatment at University Medical Center on June 27, 2009 and the funeral expenses of Tiara Clemons and Aubrey Anna Clemons were paid by the Mississippi Band of Choctaw Indians.

28. Subsequent to June 27, 2009, Dr. Guevarra was removed from staffing the emergency room at Choctaw Health Center as an emergency physician.

29. As a Trauma Center, the Choctaw Health Center is required to have a Trauma Team and Trauma Care Medical Director. On June 27, 2009, the Choctaw Health Center had no Trauma Care Medical Director, nor did it have a Trauma Team.

30. In April, 2009, Dr. Chandrashekhar Joshi, the Clinical Director of the Choctaw Health Center, sent a letter to Mr. Howard Billie, CEO of the Health Center, urgently pleading for assistance in the staffing and recruitment of competent

      emergency room physicians, and expressing doubt about whether the Choctaw Health Center could continue to provide Level IV trauma service to the population it served due to its "chronic problems". Dr. Joshi's expressed apprehensions correctly characterized the poor level of care available at the Choctaw Health Center ER on June 27, 2009.

31. In May, 2009, Dr. Joshi again forwarded his concerns relative to the Choctaw Health Center's "chronic problems" to Mr. Breedlove, the acting CEO of the Health Center, again urgently pleading for assistance improving the level of care available at the Health Center. Notwithstanding Dr. Joshi's efforts, prior to the death of Tiara Clemons and Aubrey Anna Clemons on June 27, 2009, no material improvements were made in the level of care available at the Choctaw Health Center's emergency room.

32. As a 30 week old fetus, Aubrey Anna Clemons was "quick in the womb", was viable outside of the womb, and had an approximate 92% to 93% rate of intact survival, i.e., survival as a normal, healthy infant after delivery at 30 weeks maturity.

33. The economic damages sustained as a result of the death of Tiara Clemons and Aubrey Anna Clemons include lost earnings, household services, and medical and funeral expenses.

34. Had Tiara Clemons lived, she would have obtained a Two Year or Associates Degree, and earned wages commensurate with wages earned by others with a similar level of education.

35. The amount of Tiara Clemons' lost earnings, discounted to present value, is $1,326,358. When the amount of such earnings which would have been personally consumed by Tiara Clemons in her lifetime is deducted from such amounts, the present value of the total discounted amount of Tiara Clemons' lost earnings is $639,109.

36. The value of the loss of household services caused by Tiara Clemons' death, discounted to present value, is $133,969.

37. The amount of the medical expenses associated with and reasonably incurred during the care and treatment of Tiara and Aubrey Anna Clemons during their last illness at University Medical Center is $33,734, including $4,528 in physician costs, and $29,206 in hospital expenses.

38. The amount of funeral expenses incurred in the funeral and burials of Tiara and Aubrey Anna Clemons is $4,014.

39. Had Aubrey Anna Clemons lived, she would have obtained a Two Year or Associates Degree, and earned wages commensurate with wages earned by others with a similar level of education.

40. The amount of Aubrey Anna Clemons' lost earnings, discounted to present value, is $1,104,685. When the amount of such earnings which would have been personally consumed by Aubrey Anna Clemons in her lifetime is deducted from such amounts, the present value of the total discounted amount of Aubrey Anna Clemons' lost earnings is $773,280.

41. The value of the loss of household services caused by Aubrey Anna Clemons' death, discounted to present value, is $133,969.

42. The wrongful death beneficiaries of Tiara Clemons have sustained economic damages in the total present value amount of $810,826, as follows:

| | |
|---|---|
| Lost Earnings: | $ 639,109 |
| Household Services: | $ 133,969 |
| Medical Expenses: | $ 33,734 |
| Funeral Expense: | $ 4,014 |
| | $ 810,826 |

43. The wrongful death beneficiaries of Aubrey Anna Clemons have sustained economic damages in the total present value amount of $907,249, as follows:

| | |
|---|---|
| Lost Earnings: | $ 773,280 |
| Household Services: | $ 133,969 |
| | $ 907,249 |

44. Tiara Clemons sustained <u>conscious pain and suffering</u> as a result of the breaches of the standard of care, and during her demise and death. The wrongful death beneficiaries of Tiara Clemons are entitled to an award of an amount in damages sufficient to compensate Tiara Clemons for the <u>pain and suffering</u>, in the amount of $_____ (to be determined by the Court).

45. Aubrey Anna Clemons sustained <u>conscious pain and suffering</u> as a result of the breaches of the standard of care, and during her demise and death. The wrongful death beneficiaries of Aubrey Anna Clemons are entitled to an award of an amount in damages sufficient to compensate Aubrey Anna Clemons for the <u>pain and suffering</u>, in the amount of $_____ (to be determined by

46. Tiara Clemons sustained <u>mental anguish and emotional distress</u> as a result of the breaches of the standard of care, and during her demise and death. The wrongful death beneficiaries of Tiara Clemons are entitled to an award of an amount in damages sufficient to compensate Tiara Clemons for the <u>mental anguish and emotional distress</u>, in the amount of $_____ (to be determined by the Court).

47. Aubrey Anna Clemons sustained <u>mental anguish and emotional distress</u> as a result of the breaches of the standard of care, and during her demise and death. The wrongful death beneficiaries of Aubrey Anna Clemons are entitled to an award of an amount in damages sufficient to compensate Aubrey Clemons for the <u>mental anguish and emotional distress</u>, in the amount of $_____ (to be determined by the Court).

48. As a result of the breaches of the standard of care and her resulting death, Tiara Clemons sustained <u>past and future loss of enjoyment of life,</u> The wrongful death beneficiaries of Tiara Clemons are entitled to an award of an amount in damages sufficient to compensate Tiara Clemons for the <u>past and future loss of enjoyment of life</u>, in the amount of $_____ (to be determined by the Court).

49. As a result of the breaches of the standard of care and her resulting death, Aubrey Anna Clemons sustained <u>past and future loss of enjoyment of life,</u> The wrongful death beneficiaries of Aubrey Anna Clemons are entitled to an award of an amount in damages sufficient to compensate Aubrey Anna Clemons for the <u>past and future loss of enjoyment of life</u>, in the amount of $_____ (to be determined by the Court).

50. As a result of the breaches of the standard of care and the resulting death of Tiara Clemons, her mother, Elona Clemons has sustained and will sustain <u>past and future mental anguish and emotional distress</u>. Elona Clemons, as a wrongful death beneficiary of Tiara Clemons, is entitled to an award of an amount in damages sufficient to compensate Elona Clemons for <u>past and future mental anguish and emotional distress</u> arising from the death of her mother, in the amount of $_____ (to be determined by the Court).

51. As a result of the breaches of the standard of care and the resulting death of Tiara Clemons, his mother, Keontray Clemons has sustained and will sustain <u>past and future mental anguish and emotional distress</u>. Keontray Clemons, as a wrongful death beneficiary of Tiara Clemons, is entitled to an award of an amount in

damages sufficient to compensate Keontray Clemons for <u>past and future mental anguish and emotional distress</u> arising from the death of his mother, in the amount of $_____ (to be determined by the Court).

52. As a result of the breaches of the standard of care and the resulting death of Aubrey Anna Clemons, her sister, Elona Clemons has sustained and will sustain <u>past and future mental anguish and emotional distress</u>. Elona Clemons, as a wrongful death beneficiary of Aubrey Anna Clemons, is entitled to an award of an amount in damages sufficient to compensate Elona Clemons for <u>past and future mental anguish and emotional distress</u> arising from the death of her sister, in the amount of $_____ (to be determined by the Court).

53. As a result of the breaches of the standard of care and the resulting death of Aubrey Anna Clemons, his sister, Keontray Clemons has sustained and will sustain <u>past and future mental anguish and emotional distress</u>. Keontray Clemons, as a wrongful death beneficiary of Aubrey Anna Clemons, is entitled to an award of an amount in damages sufficient to compensate Keontray Clemons for <u>past and future mental anguish and emotional distress</u> arising from the death of his sister, in the amount of $_____ (to be determined by the Court).

54. As a result of the breaches of the standard of care and the resulting death of Tiara Clemons, her mother, Elona Clemons has sustained and will sustain <u>past and future loss of society and companionship of Tiara Clemons</u>. Elona Clemons, as a wrongful death beneficiary of Tiara Clemons, is entitled to an award of an amount in damages sufficient to compensate Elona Clemons for <u>past and future loss of society and companionship of Tiara Clemons</u> arising from the death of her mother, in the amount of $_____ (to be determined by the Court).

55. As a result of the breaches of the standard of care and the resulting death of Tiara Clemons, his mother, Keontray Clemons has sustained and will sustain <u>past and future loss of society and companionship of Tiara Clemons</u>. Keontray Clemons, as a wrongful death beneficiary of Tiara Clemons, is entitled to an award of an amount in damages sufficient to compensate Keontray Clemons for <u>past and future loss of society and companionship of Tiara Clemons</u> arising from the death of his mother, in the amount of $_____ (to be determined by the Court).

56. As a result of the breaches of the standard of care and the resulting death of Aubrey Anna Clemons, her sister, Elona Clemons has sustained and will sustain <u>past and future loss of society and companionship of Aubrey Anna Clemons</u>. Elona Clemons, as a wrongful death beneficiary of Aubrey Anna Clemons, is entitled to an award of an amount in damages sufficient to compensate Elona

         Clemons for <u>past and future loss of society and companionship of Aubrey Anna Clemons</u> arising from the death of her sister, in the amount of $_____ (to be determined by the Court).

57.    As a result of the breaches of the standard of care and the resulting death of Aubrey Anna Clemons, his sister, Keontray Clemons has sustained and will sustain <u>past and future loss of society and companionship of Aubrey Anna Clemons</u>. Keontray Clemons, as a wrongful death beneficiary of Aubrey Anna Clemons, is entitled to an award of an amount in damages sufficient to compensate Keontray Clemons for <u>past and future loss of society and companionship of Aubrey Anna  Clemons</u> arising from the death of his sister, in the amount of $_____ (to be determined by the Court).

## CONCLUSIONS OF LAW[2]

1.    At all material times, Dr. Victoria Guevarra, Jill Shaw, FNP, and all other individuals who provided medical care and treatment to Tiara Clemons and Aubrey Anna Clemons were acting in the course and scope of their employment with the Choctaw Health Center, a healthcare facility owned and operated by, and located on property occupied by, the Mississippi Band of Choctaw Indians, in Choctaw, Mississippi. [Stipulation No. 19].

2.    The United States of America, Defendant, is statutorily and at common law responsible for the wrongful and negligent acts, if any, with respect to Tiara Clemons and Aubrey Anna Clemons which occurred at the Choctaw Health Center, located on property occupied by the Mississippi Band of Choctaw Indians, in Choctaw, Mississippi. [Stipulation No. 20].

3.    As the sole wrongful death beneficiaries of Tiara Clemons and Aubrey Anna Clemons, deceased, Elona Clemons and Keontray Clemons, by and through Kathy Clemons and Bill Clemons, Guardians, are entitled to assert and prosecute a claim for damages arising out of the wrongful death of Tiara Clemons and Aubrey Anna Clemons.  [Stipulation No. 21]

4.    The care rendered to Tiara and Aubrey Anna Clemons on June 27, 2009 did not comply with, and fell below, the standard of care applicable to the Choctaw Health Center, and Dr. Guevarra. [Stipulation No. 22]

5.    Dr. Guevarra and the Choctaw Health Center breached the applicable standard of care while rendering medical care and treatment to Tiara and Aubrey Anna

---

[2]Conclusions of Law Nos. 1 - 7 have been stipulated, and are reproduced as they may include mixed issues of fact and law.

        Clemons. The breach of the standard of care included a failure to timely transfer Tiara and Aubrey Anna to a healthcare facility with additional treatment capabilities, and/or failing to insert a chest tube, i.e., perform a thoracostomy, to protect Tiara Clemons airway. [Stipulation No. 23]

6. Had Tiara and Aubrey Anna Clemons received treatment at the Choctaw Health Center consistent with the applicable standard of care, i.e., timely transfer to a healthcare facility with additional treatment options available and/or insertion of a chest tube, both Tiara and Aubrey Anna Clemons would have survived intact. [Stipulation No. 24]

7. The breaches of the standard of care of Dr. Guevarra and the Choctaw Health Center while rendering medical care and treatment to Tiara Clemons and Aubrey Anna Clemons were a proximate cause of the deaths of Tiara Clemons and Aubrey Anna Clemons. [Stipulation No. 25]

8. Pursuant to M<small>ISS</small>. C<small>ODE</small> A<small>NN</small>. § 85-5-7 (1972), no fault or responsibility for the death of Tiara Clemons or Aubrey Anna Clemons can be apportioned or assigned to Marena Clemons or any other intentional tortfeasor for purposes of reducing or mitigating liability attributable to Defendant for the deaths, or damages owed by Defendant to the wrongful death beneficiaries.

9. M<small>ISS</small>. C<small>ODE</small> A<small>NN</small>. § 11-1-60 (1972), which seeks to limit non-economic damages is inapplicable in this action to limit the non-economic damages to which the wrongful death beneficiaries of Tiara Clemons and Aubrey Anna Clemons are entitled. § 11-1-60 has been held unconstitutional, and unenforceable. *Mary Carter, et al v. Interstate Realty Management Company, et al*, op. at 14 (Coahoma County Circuit Court, Miss. Apr. 20, 2012).

10. That with respect to the claim for the wrongful death of Tiara Clemons, and the claim for the wrongful death of Aubrey Anna Clemons, proper Notices of Claim have been provided to Defendant United States of America pursuant to 28 U.S.C. § 1346(b) and/or 42 U.S.C. §233 (Federal Tort Claims Act); all administrative remedies have been exhausted by Plaintiffs, and; all conditions precedent to entry of judgment in favor of Plaintiffs have been satisfied.

11. Plaintiffs are entitled to entry of Judgment against the Defendant, United States of America, for the death of Tiara Clemons, in the amount of $810,826 in economic damages, and in the amount of $1,689,174 in non-economic damages, in a total amount of $2,500,000, the amount demanded in Plaintiff's Notice of Claim.

12. Plaintiffs are entitled to entry of Judgment against the Defendant, United States of America, for the death of Aubrey Anna Clemons, in the amount of $907,249 in

economic damages, and in the amount of $1,592,751 in non-economic damages, in a total amount of $2,500,000, the amount demanded in Plaintiff's Notice of Claim.

Respectfully submitted, this the 30th day of April, 2012.

**DATED:** April 30, 2012.

KATHY CLEMONS, PLAINTIFF

BY: _____/s Michael T. Jaques_____
One of their Attorneys

**Michael T. Jaques, MSB No. 8708**
**Sessums, Dallas & Morrison, PLLC**
**240 Trace Colony Park Drive, Suite 100**
**Ridgeland, Mississippi 39157**
**601.933.2040 - Telephone**
**601.933.2050 - Facsimile**

## CERTIFICATE OF SERVICE

I, **Michael T. Jaques,** do hereby certify that on this, the 30th day of April, 2012, I electronically filed the foregoing with the Clerk of the Court using the ECF system which sent notification of such filing to all counsel of record.

**THIS** the 30th day of April, 2012.

_____Michael T. Jaques_____
**Michael T. Jaques**