IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

KATHY CLEMONS, INDIVIDUALLY,
AND AS GUARDIAN OF ELONA CLEMONS,
A MINOR AND KEONTRAY CLEMONS, A MINOR;
AND ON BEHALF OF ALL WRONGFUL DEATH
BENEFICIARIES OF TIARA RENEA CLEMONS,
DECEASED                                                                                    PLAINTIFFS

VS.                                                         CAUSE NO.: 4:10-cv-209 CWR-FKB

THE UNITED STATES OF AMERICA                                              DEFENDANT

consolidated with

KATHY CLEMONS, INDIVIDUALLY,
AND AS GUARDIAN OF ELONA CLEMONS,
A MINOR AND KEONTRAY CLEMONS, A MINOR;
AND ON BEHALF OF ALL WRONGFUL DEATH
BENEFICIARIES OF AUBREY ANNA CLEMONS,
DECEASED                                                                                    PLAINTIFFS

VS.

THE UNITED STATES OF AMERICA                                              DEFENDANT

**PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW**

**FINDINGS OF FACT**[1]

1.  On June 27, 2009, Tiara Clemons was a 20 year old Native American female, and a citizen of the Choctaw Nation, residing in Choctaw, Neshoba County, Mississippi. On June 27, 2009, Tiara received a puncture wound near the top of her right scapula. At that time, Tiara Clemons was 30 weeks pregnant with Aubrey Clemons, a minor child. As a result of the wound, Tiara Clemons sought medical treatment for herself and her unborn child from the Choctaw Health Center located in Choctaw, Neshoba County, Mississippi.

---

[1] Proposed Findings of Fact Nos. 1 - 28 have been stipulated between the parties, as set forth in this Court's Pre-Trial Order.

2.  At approximately 5:19 p.m., on June 27, 2009, Tiara Clemons was examined by Choctaw ambulance EMT's who responded to her call for assistance due to injuries received from a puncture wound to her back. She was examined, and her vital signs were stable. She was noted to be awake and alert, and sitting on the ground. Importantly, the Choctaw EMT noted that she had "bilateral breath sounds clear to auscultation". Her wound was bandaged, and she was not bleeding externally. Tiara Clemons was given oxygen, and an IV was started on her left hand. In that condition, Tiara Clemons and her unborn child, Aubrey Anna Clemons, were transported to Choctaw Health Center, recognized by the Mississippi Department of Health as a Level IV Trauma Center.

3.  Tiara and Aubrey Anna arrived at the Choctaw Health Center by ambulance at 5:22 p.m. They were not seen, examined, or triaged until 5:42 p.m.

4.  At 5:42 p.m., Jill Shaw, a family nurse practitioner, examined Tiara. Nurse Shaw noted that Tiara was 30 weeks pregnant with Aubrey Anna, and recorded Tiara's pain at a "10" on a scale of 1 to 10, with 10 being the "most severe" pain. Nurse Shaw ordered laboratory tests on Tiara's blood, a chest x-ray, and that a fetal monitor be placed on Tiara to monitor Aubrey Anna. At 5:42 p.m., Nurse Shaw obtained a blood pressure of 109/62.

5.  At 5:45 p.m., Tiara and Aubrey Anna were examined by Dr. Guevarra, the ER doctor staffing the Choctaw Health Center Emergency Room. Dr. Guevarra noted that Tiara had received a stab would in the right scapula, and that by 5:45 p.m., she had decreased breath sounds on the right upper fields. Dr. Guevarra ordered laboratory tests, and ordered that Tiara be given morphine for pain.

6.  At 5:53 p.m., Tiara was taken to the radiology room very near the emergency room, where two chest x-rays were taken. The first x-ray was placed in the developer at 5:53 p.m. - the second at 5:57 p.m. These x-rays were available to be viewed by Dr. Guevarra in the emergency room no later than 6:00 p.m. By 6:10 p.m. Dr. Guevarra had reviewed the x-rays and was aware of the internal bleeding.

7.  The 5:53 p.m. and 5:57 p.m. chest x-rays revealed that Tiara had a large right pleural effusion, with unilateral pulmonary infiltrate in the right lung, a hemothorax on the right with a fifteen to twenty percent pneumothorax on the right. Upon viewing the x-ray, Dr. Guevarra diagnosed Tiara with a pneumothorax in her right lung, and that she was bleeding internally.

8.  At 6:21 p.m., Dr. Guevarra received the result of the blood tests previously ordered. The results showed diminished hemoglobin and hematocrit levels. By 6:40 p.m., Tiara had become hypotensive. Her blood pressure was recorded at

81/47.

9. Between 6:50 p.m. and 7:05 p.m. Dr. Guevarra attempted to arrange a transfer of Tiara to Anderson Medical Center in Meridian, Mississippi, by ground ambulance. Dr. Guevarra called Anderson Regional Medical Center in Meridian, Mississippi, located about 40 miles distance, about a transfer. However, the ER doctor at Anderson denied Dr. Guevarra's request for transfer because Clemons was pregnant. Dr. Guevarra did not tell the doctor at Anderson that it was a life threatening situation regarding Clemons.

10. It was at least 6:50 p.m. when Dr. Guevarra began trying to have Clemons transported to medical facility with emergency services. Dr. Guevarra began this process after being urged by CHC nursing personnel and Choctaw EMS personnel to have Clemons transported to a hospital.

11. Todd Harrison, one of the Choctaw EMT/paramedics, told Dr. Guevarra that Tiara was not stable enough to transport by ground ambulance, and told her to call the AirCare dispatch and send a helicopter to transport Tiara to University Medical Center in Jackson, Mississippi, a Level I Trauma Center. Dr. Guevarra then called for the UMC AirCare helicopter to transport Tiara. Dr. Guevarra contacted UMC which dispatched a helicopter with EMT personnel. She did not relay that CHC had no blood nor ability to drain fluids from Clemons' chest. She did not contact or try to transport Clemons to Neshoba County General Hospital, about 8 miles distance.

12. At approximately 7:00 p.m., Dr. Guevarra ordered another chest x-ray, which revealed a "massive" right hemothorax.

13. At 7:30 p.m., Tiara Clemons was assessed by the UMC AirCare EMT's upon their arrival at the Choctaw Health Center. Upon assessment, Tiara was hypoxic, hypotensive, and worsening. Her blood pressure had fallen to 82/54, her oxygen saturation was at 86%, and her respirations were 36. The UMC EMT's noted the massive hemothorax visualized on the chest x-ray. Tiara was gasping for breath, and no breath sounds could be heard on the right side of her chest. The UMC EMT's requested that Dr. Guevarra perform a thoracostomy. EMT medical notes reflect that Dr. Guevarra repeatedly refused to insert a tube into Clemons' chest to drain the blood despite requests by UMC EMT. Dr. Guevarra did not perform the procedure. The UMC EMT's also requested that Dr. Guevarra give blood to Tiara Clemons. Dr. Guevarra did not order blood to be given, and informed that none was available at the Choctaw Health Center.

14. At approximately 7:30 p.m., the UMC EMT's noted that there was a failure to protect Tiara's airway, and intubated Tiara at 7:35 p.m. At 7:45 p.m., due to

observed cyanosis (turning blue), decreased breath sounds, severe shortness of breath, decreased cardiac output, low oxygen and oxygen saturation rates, the UMC EMT's performed a needle thoracostomy on the right chest, which returned approximately 300 ml of air and blood.

15. At 8:09 p.m., the UMC AirCare EMT's departed for UMC in the helicopter with Tiara and Aubrey Anna. Measured at 8:15 p.m. and 8:30 p.m., Tiara's oxygen saturation level was 42%. By 8:40 p.m., Tiara's oxygen saturation level had dropped so low that it was incapable of measurement, and was recorded as "0%".

16. At 8:42 p.m., as the AirCare helicopter was approaching UMC, while over the VA Hospital, Tiara went into cardiac arrest. At 8:44 p.m., Advanced Cardiac Life Support protocols were employed by the EMT's, including administration of atropine and epinephrine. From 8:44 p.m. until 8:54 p.m. cardiopulmonary resuscitation (CPR) was performed. At 8:45 p.m., the UMC EMT's performed a needle thoracostomy to Tiara's left chest, which returned 20 ml of air and blood. At 8:50 p.m., the UMC EMT's delivered Tiara to the UMC emergency physicians.

17. At 8:50 p.m. - the UMC emergency physicians performed a thoracostomy and inserted bilateral chest tubes. The chest tube on the right returned 2400 - 2500 cc's of blood. A cardiac ultrasound was performed, which revealed no cardiac activity present in either Tiara or Aubrey Anna.

18. At 8:52 p.m., Aubrey Anna was delivered by emergency Caesarean section, but showed no signs of life. CPR was continued on Tiara Clemons. At 8:54 p.m., another cardiac ultrasound was performed. With no cardiac activity noted, Tiara Clemons and Aubrey Anna Clemons were pronounced dead.

19. At all material times, Dr. Victoria Guevarra, Jill Shaw, FNP, and all other individuals who provided medical care and treatment to Tiara Clemons and Aubrey Anna Clemons were acting in the course and scope of their employment with the Choctaw Health Center, a healthcare facility owned and operated by, and located on property occupied by, the Mississippi Band of Choctaw Indians, in Choctaw, Mississippi.

20. The United States of America, Defendant, is statutorily and at common law responsible for the wrongful and negligent acts, if any, with respect to Tiara Clemons and Aubrey Anna Clemons which occurred at the Choctaw Health Center, located on property occupied by the Mississippi Band of Choctaw Indians, in Choctaw, Mississippi.[2]

---

[2] The CHC is a Section 638 contract facility (Public Law 93-638), operated pursuant to the Indian Self-Determination and Education Assistance Act, 25 U.S.C. § 450f(a) (1994). The

21. As the sole wrongful death beneficiaries of Tiara Clemons and Aubrey Anna Clemons, deceased, Elona Clemons and Keontray Clemons, by and through Kathy Clemons and Bill Clemons, Guardians, are entitled to assert and prosecute a claim for damages arising out of the wrongful death of Tiara Clemons and Aubrey Anna Clemons.

22. The care rendered to Tiara and Aubrey Anna Clemons on June 27, 2009 did not comply with, and fell below, the standard of care applicable to the Choctaw Health Center, and Dr. Guevarra.

23. Dr. Guevarra and the Choctaw Health Center breached the applicable standard of care while rendering medical care and treatment to Tiara and Aubrey Anna Clemons. The breach of the standard of care included a failure to timely transfer Tiara and Aubrey Anna to a healthcare facility with additional treatment capabilities, and/or failing to insert a chest tube, i.e., perform a thoracostomy, to protect Tiara Clemons airway.

24. Had Tiara and Aubrey Anna Clemons received treatment at the Choctaw Health Center consistent with the applicable standard of care, i.e., timely transfer to a healthcare facility with additional treatment options available and/or insertion of a chest tube, both Tiara and Aubrey Anna Clemons would have had a greater than 50% chance of survival.

25. The breaches of the standard of care of Dr. Guevarra and the Choctaw Health Center while rendering medical care and treatment to Tiara Clemons and Aubrey Anna Clemons were the proximate cause of the deaths of Tiara Clemons and Aubrey Anna Clemons.

26. On June 27, 2009, Tiara Clemons was stabbed by her sister Marena, consistent

---

Act provides that tribes may enter into self-determinative contracts with the Secretary of the Interior and the Secretary of Health and Human Services (HHS) to administer programs or services that otherwise would be administrated by the federal government. For the purposes of 42 U.S.C. § 233, such tribal facilities are deemed part of the Public Health Service, and their employees are deemed Public Health Service Employees while acting within the scope of their employment in carrying out the contract. The FTCA provides the exclusive remedy for any related claims. However, neither the Department of the Interior or HHS has any authority or input to the employment of any person providing care at such facilities. Their employment is exclusively a matter of tribal control. While HHS could arguably decertify a facility such as CHC, such action would involve political decisions at the highest level of the federal government and would be characterized as actions between nations, i.e. the United States and the Choctaw Tribe. Any amounts paid as damages in the present case will come from the judgment fund of the United States and not from the Choctaw Tribe.

with the notations in the medical records and autopsy report, and Marena currently resides in the same household as Tiara's two surviving children.

27. The medical expenses associated with treatment of Tiara Clemons and Aubrey Anna Clemons at University Medical Center on June 27, 2009, and the funeral expenses of Tiara Clemons and Aubrey Anna Clemons were paid by the Mississippi Band of Choctaw Indians.

28. Subsequent to June 27, 2009, Dr. Guevarra was removed from staffing the emergency room at Choctaw Health Center as an emergency physician.

29. After being triaged at the CHC some twenty minutes after arrival at approximately 1722, Tiara Clemons' medical records reflect she received morphine for pain at 1755 (Plaintiff's Exhibit 36). Her CHC medical records do not reflect additional complaints of pain but there was testimony Tiara Clemons did have increasing difficulty in breathing until sedated by UMC EMT personnel.

30. Prior to being intubated, at approximately 1934 UMC EMT personnel (Plaintiff's Exhibit 37) administered sedatives to Tiara Clemons which Kyle Ray testified rendered her unconscious from that time until her death. Therefore, there is no evidence of pain and suffering after she was sedated.

31. Any pain and suffering experienced by Tiara Clemons was of a relatively short duration and abated by the morphine administered at the CHC.

32. Kathy Clemons testified that Tiara Clemons had difficulties in school. Her permanent school record (Defense Exhibit 4) reflects at least three social promotions to the next grade and achieved only minimal test scores on her 8th grade proficiency tests. There is also a note that she was placed in special education class in 6th grade.

33. Tiara Clemons dropped out of school in the 9th grade and had not completed all the required courses for a GED at the time of her death.

34. There is no evidence that Tiara Clemons may have obtained a two year or associates degree and earned wages commensurate with wages earned by others with a similar level of education beyond testimony by Kathy Clemons that Tiara had expressed to her a desire to take courses at East Central Community College.

35. Kathy Clemons testified that to her knowledge Tiara Clemons had never applied or sought to apply to any college with a two year degree program anytime prior to her death.

36. If she had successfully completed a GED program, the amount of Tiara Clemons' lost earnings, including loss of household services, as reflected in Mr. James Koerber's expert report at appendix A (Defense Exhibit 1), totally discounted to present value is $390,466 as a minimum wage earner with a GED.

37. If lost earnings are calculated based upon the assumption she would receive an associate's degree, Tiara Clemons' lost earnings, including loss of household services, as reflected in Mr. James Koerber's expert report at appendix A (Defense Exhibit 1), totally discounted to present value is $719,645.

38. There was no testimony establishing pain and suffering experienced by Aubrey Anna Clemons.[3]

39. While Dr. Thompson speculated that Aubrey Anna Clemons would have graduated from high school or obtained a two year or associates degree, there is no evidence to support that speculation.

40. Mr. James Koerber's expert report (Defense Exhibit 2), calculated for comparative purposes with Dr. Thompson's expert report, opined that if Aubrey Anna Clemons successfully completed high school or received an associate's degree, her lost earnings, including loss of household services, discounted to present value, would be $355,642 as a high school graduate and $511,293 as someone with an associate's degree.

41. If economic damages could be calculated for Aubrey Anna Clemons they should be calculated considering her as a single person as testified to by Mr. James Koerber.

42. The economic damages for the wrongful death beneficiaries of Aubrey Anna Clemons are too speculative to be calculated as she was an unborn child.

43. Tiara Clemons sustained approximately two hours <u>conscious pain and suffering</u> [4]

---

[3] While Miss. Code Ann. § 11-7-13 permits a wrongful death action to be brought on behalf of an unborn child, there has to be proof of damages. "[W]hen the plaintiff can prove liability and damages by a preponderance of the evidence, the recovery of damages is permitted . . ." *66 Federal Credit Union, et al v. Tucker*, 853 So.2d 104, 113 (Miss. 2003).

[4] M.C.A. § 11-1-69 only permits recovery for loss of enjoyment of life as part of the calculation for damages for pain and suffering, and is not a separate element of damages apart from pain and suffering. In a wrongful death action, there is no recovery for loss of enjoyment of life caused by death. Conscious mental anguish and emotional distress are included in pain and suffering and are not separate elements.

as a result of the breach of the standard of care. The wrongful death beneficiaries of Tiara Clemons are entitled to an award of an amount in damages sufficient to compensate Tiara Clemons for the <u>pain and suffering</u>, in the amount of $_____ (to be determined by the Court).

44. There was no evidence at trial to prove Aubrey Anna Clemons sustained <u>conscious pain and suffering</u> as a result of the breach of the standard of care during her demise and death. The evidence was that she died due to a lack of blood/oxygen from her mother and there was no testimony that she suffered <u>conscious pain and suffering</u>.

45. Elona Clemons and Keontray Clemons did not suffer any physical injuries and are not entitled to any damages for <u>future mental anguish and emotional distress</u> related to the wrongful deaths of Tiara Clemons or Aubrey Anna Clemons.

46. Mississippi does not recognize damages for <u>past and future loss of society and companionship</u> for a child upon the loss of a parent.[5] Therefore, damages for <u>past and future loss of society and companionship of Tiara Clemons</u> are not recoverable by Elona Clemons or Keontray Clemons under state law. Nor is there any recovery for alleged damages for <u>past and future loss of society and companionship of Aubrey Anna Clemons</u> by her siblings. There was no proof of any preexisting relationship between Aubrey Anna Clemons prior to her death and her siblings that could be characterized as affectionate or devoted.

### **CONCLUSIONS OF LAW** [6]

1. At all material times, Dr. Victoria Guevarra, Jill Shaw, FNP, and all other individuals who provided medical care and treatment to Tiara Clemons and Aubrey Anna Clemons were acting in the course and scope of their employment with the Choctaw Health Center, a healthcare facility owned and operated by, and located on property occupied by, the Mississippi Band of Choctaw Indians, in Choctaw, Mississippi. [Stipulation No. 19].

2. The United States of America, Defendant, is statutorily and at common law responsible for the wrongful and negligent acts, if any, with respect to Tiara

---

[5] *Thompson v. Love*, 661 So.2d 1131 (Miss. 1995). Mississippi law does not provide recovery for a child's loss of consortium of a parent. See also *Louisville & N.R. Co. v. Whisenant*, 214 Miss. 421, 58 So.2d 908 (1952) were recovery for a sibling may be permissible with a showing of a preexisting affectionate and devoted relationship.

[6] Conclusions of Law Nos. 1 - 7 have been stipulated, and are reproduced as they may include mixed issues of fact and law.

Clemons and Aubrey Anna Clemons which occurred at the Choctaw Health Center, located on property occupied by the Mississippi Band of Choctaw Indians, in Choctaw, Mississippi. [Stipulation No. 20].

3. As the sole wrongful death beneficiaries of Tiara Clemons and Aubrey Anna Clemons, deceased, Elona Clemons and Keontray Clemons, by and through Kathy Clemons and Bill Clemons, Guardians, are entitled to assert and prosecute a claim for damages arising out of the wrongful death of Tiara Clemons and Aubrey Anna Clemons. [Stipulation No. 21]

4. The care rendered to Tiara and Aubrey Anna Clemons on June 27, 2009 did not comply with, and fell below, the standard of care applicable to the Choctaw Health Center, and Dr. Guevarra. [Stipulation No. 22]

5. Dr. Guevarra and the Choctaw Health Center breached the applicable standard of care while rendering medical care and treatment to Tiara and Aubrey Anna Clemons. The breach of the standard of care included a failure to timely transfer Tiara and Aubrey Anna to a healthcare facility with additional treatment capabilities, and/or failing to insert a chest tube, i.e., perform a thoracostomy, to protect Tiara Clemons' airway. [Stipulation No. 23]

6. Had Tiara and Aubrey Anna Clemons received treatment at the Choctaw Health Center consistent with the applicable standard of care, i.e., timely transfer to a healthcare facility with additional treatment options available and/or insertion of a chest tube, both Tiara and Aubrey Anna Clemons would have survived intact. [Stipulation No. 24]

7. The breaches of the standard of care of Dr. Guevarra and the Choctaw Health Center while rendering medical care and treatment to Tiara Clemons and Aubrey Anna Clemons were a proximate cause of the deaths of Tiara Clemons and Aubrey Anna Clemons. [Stipulation No. 25]

8. Pursuant to Miss. Code Ann. § 85-5-7 (1972), no fault or responsibility for the death of Tiara Clemons or Aubrey Anna Clemons can be apportioned or assigned to Marena Clemons or any other intentional tortfeasor for purposes of reducing or mitigating liability attributable to Defendant for the deaths, or damages owed by Defendant to the wrongful death beneficiaries.

9. Miss. Code Ann. § 11-1-60 (1972), which limits non-economic damages to $500,000 is applicable in this action to limit the non-economic damages to which the wrongful death beneficiaries of Tiara Clemons and Aubrey Anna Clemons may be entitled. Section 11-1-60, though currently under review by the Mississippi Supreme Court, remains the law in the State of Mississippi regardless

that a Mississippi circuit court judge has recently ruled it unconstitutional.

10. That with respect to the claim for the wrongful death of Tiara Clemons, and the claim for the wrongful death of Aubrey Anna Clemons, proper Notices of Claim have been provided to Defendant United States of America pursuant to 28 U.S.C. § 1346(b) and/or 42 U.S.C. §233 (Federal Tort Claims Act); all administrative remedies have been exhausted by Plaintiffs, and; all conditions precedent to entry of judgment in favor of Plaintiffs have been satisfied.

11. Plaintiffs are entitled to entry of Judgment against the Defendant, United States of America, for the death of Tiara Clemons, in the amount of $_____ in economic damages, and in the amount of $_____ in non-economic damages, in a total amount of $_____ the amount determined by the Court.

12. Plaintiffs are entitled to entry of Judgment against the Defendant, United States of America, for the death of Aubrey Anna Clemons, in the amount of $_____ in economic damages, and in the amount of $_____ in non-economic damages, in a total amount of $_____ the amount determined by the Court.

Respectfully submitted, this the 16th day of May, 2012.

    Respectfully submitted,

    GREGORY K. DAVIS
    United States Attorney


By:   /s/ Lynn Murray
    LYNN MURRAY, MBN 3690
    Assistant United States Attorney
    501 East Court Street, Suite 4.430
    Jackson, Mississippi 39201
    Telephone No.: (601) 973-2835
    Facsimile No.: (601) 965-4032
    Lynn.Murray@usdoj.gov

## CERTIFICATE OF SERVICE

I, **Lynn Murray,** do hereby certify that on this, the 16th day of May, 2012, I electronically filed the foregoing with the Clerk of the Court using the ECF system which sent notification of such filing to all counsel of record.

**THIS** the 16th day of May, 2012.

/s/ Lynn Murray
Assistant United States Attorney